[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Jose Arzuaga, alleges in his petition for a Writ of Habeas Corpus originally filed with the Court on April 2, 2001, and amended on September 11, 2002, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth andFourteenth Amendments to the United States Constitution as well as Article I, Section 8 of the Constitution of the state of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges three specific ways in which the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial counsel failed to communicate with him regarding what was occurring in his case. Second, the petitioner complains that the trial counsel failed to argue and present the petitioner's version of the events. Finally, he alleges that his trial counsel failed to ensure that the petitioner's plea was knowing, intelligent, and voluntary.
This matter came on for trial before the Court on February 6, 2003. The petitioner, Inmate Alan Lane, and his trial defense counsel, Attorney Megan McLoughlin, were the only witnesses who testified at the trial. In addition, the Court received a transcript of the petitioner's August 21, 2000 and August 31, 2000 plea and sentencing before Judge Burton Kaplan into evidence. The Court has reviewed all of the testimony and evidence and makes the following findings of fact.
Findings of Fact
1. The petitioner was the defendant in the several criminal cases, Docket Numbers CR00-0156166, CR00-0159882, CR00-0159384, and MV00-0566647, pending in the Judicial District of Bridgeport in which he was charged with numerous offenses involving the sale of narcotics, criminal trespass and assault. CT Page 1856
2. As a result of a conviction for an earlier narcotics violation the petitioner had an additional three-year sentence for which he was on probation at the time of the new offenses.
3. The petitioner was represented throughout all of the proceedings in this matter by Attorney Megan McLoughlin, a public defender assigned to the GA#2 Courthouse in the Judicial District of Bridgeport.
4. Attorney McLoughlin was in the final stages of negotiating a highly favorable plea-bargain with the state on the initial criminal files when the petitioner was arrested on a subsequent charge of sale of narcotics.
5. This second narcotics arrest was deemed by Attorney McLoughlin to be problematic for the petitioner as he was observed and apprehended in the process of making sales of narcotics to undercover officers.
6. While the petitioner was being held in the Bridgeport Correction Center due to his failure to make bond on the second narcotics file, the petitioner was charged with an assault upon a Corrections Officer.
7. On August 31, 2000, the petitioner's counsel was able to reach an all encompassing pretrial agreement with the state whereby the petitioner would enter pleas of guilty, under the Alford doctrine, to assault upon a Corrections Officer, possession of narcotics with intent to sell, simple trespass, and reckless driving, in exchange for which the state would enter a nolle as to all of the other outstanding charges and recommend a total effective sentence of fifteen years, execution suspended after the service of six years to be followed by five years probation.
8. The trial court, Kaplan, J., conducted an inquiry into the voluntariness and providence of the petitioner's plea. The petitioner and his counsel waived a recitation of the facts surrounding the arrest of the petitioner and stipulated to a factual basis for the charges to which he was pleading.
9. Prior to accepting the petitioner's plea and entering a finding of guilty, the Court inquired if the petitioner had had sufficient time in which to consult with his attorney, whether he was satisfied with his lawyer's representation, and whether he wished to waive his rights to a jury trial, to confront and cross-examine his accusers and present defenses. The petitioner answered in the affirmative.
10. Thereafter, the petitioner was convicted of the charged offenses in accordance with his plea and sentenced to the agreed upon sentence. CT Page 1857
Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Stricklandv. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984), before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland,infra, at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra, at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139 at 151 (1995). Given this modified standard to be applied to plea cases, the petitioner must first prove that the performance by his trial defense counsel was deficient and, that absent this deficient performance, the petitioner would have pled not guilty, would have gone to trial, and been acquitted.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is indisputable fact that many times if one had foreknowledge of certain events; different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but CT Page 1858 must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley v. Commisioner of Corrections,47 Conn. App. 253 at 264 (1979), cert. den., 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry v. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
It is not necessary to consider whether a trial counsel's performance was deficient if the Habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v.Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) ('[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')." Valeriano v. Bronson, 209 Conn. 75 at 86 (1988).
It is upon this second shoal, the lack of prejudice resulting from the trial defense counsel's deficient performance, that the petitioner's vessel ultimately runs aground. While it is possible that petitioner's counsel might have been able to obtain a plea agreement that did not involve the petitioner pleading guilty to the assault charge, it is highly probable that even had she done so, the petitioner would still have pled guilty. "[G]uilt, or the degree of guilt, is at times uncertain and elusive, an accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty. McCoy v. United States, 124 U.S.App.D.C. 177, 179,363 F.2d 306, 308 (1966)." See North Carolina v. Alford, 400 U.S. 25
at 33 (1970).
In the instant case, the petitioner was charged with numerous narcotics and other violations that would have, had he been convicted on all charges, exposed him to a lengthy sentence approaching one hundred years in prison. In addition many of the charged offense contained minimum mandatory sentences. It is clearly understandable then why the petitioner would have made the voluntary decision to plead guilty under the Alford
doctrine in order to minimize his potential exposure and obtain a quick release from confinement. "Reasons other than the fact that he is guilty CT Page 1859 may induce a defendant to so plead . . . [and he] must be permitted to judge for himself in this respect. State v. Kaufman, 51 Iowa 578, 580,2 N.W. 275, 276 (1879)." See North Carolina v. Alford, 400 U.S. 25 at 33
(1970). By making the pragmatic decision to plead guilty, even though he may have believed himself to have been innocent, the petitioner obtained a sentence limited to six years and avoided a potential prison sentence that would have been the functional equivalent of imprisonment for the rest of his life.
The ultimate decision as to whether a criminal defendant pleads guilty or pleads not guilty rests with the individual charged with the crime. A criminal defendant has a Constitutional right to persist in a plea of not guilty, even in the face of seemingly insurmountable obstacles. It is not, and never has been, for the trial defense counsel to decide the plea that his client should enter. However, "[b]ecause a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the `right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction.' Copas v.Commissioner of Correction, 234 Conn. 139, 154 (1995)." See Baillargeonv. Commissioner of Correction, 67 Conn. App. 716 at 721 (2002). Consequently, an attorney who fails to conduct an adequate investigation may well be providing ineffective representation.
In the instant case, it is clear that Attorney McLaughlin did all that she could have done to represent her client's interests. She did meet with her client on several occasions, visit the alleged crime scene, review the police reports and other documents contained within the prosecutor's file, interview the alleged victim and set the matter down for investigation by the public defender's investigators. While Ms. McLoughlin did not interview Inmate Alan Lane, the undisputed evidence at the habeas trial shows that her client, the petitioner did not advise her that Mr. Lane, or anyone else for that matter, might be able to provide exculpatory evidence pertaining to the assault upon a corrections officer.
Most importantly, however, Attorney McLoughlin did negotiate a favorable plea bargain for her client. "To satisfy the prejudice prong, the petitioner must show a `reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Baillargeon v. Commissioner of Correction,67 Conn. App. 716 at 722 (2002). Here, despite the possibility of his being innocent of the charge of assault upon a corrections officer, the petitioner made the conscious decision to elect to take the pragmatic approach of pleading guilty under the Alford doctrine in order to minimize CT Page 1860 his potential exposure and sentence. The petitioner made the voluntary decision to take that course rather than to insist upon a not guilty plea and a trial on the merits. "In determining the validity of a plea, `[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160,27 L.Ed.2d 162 (1970)." State v. Parker, 67 Conn. App. 351 at 354 (2001). Rather than prove that, but for his trial defense counsel's inadequate performance, the petitioner would have elected to plead not guilty and taken the case to trial, his own testimony confirms that the petitioner did make a voluntary and intelligent choice to plead guilty and avoid a heavy sentence. It is indeed unfortunate that this petitioner found himself in the position whereby he was forced to make this Hobson's Choice,[1] but it was his own actions in amassing a prior record of felony convictions, multiple files and problematic cases to defend that put him in this position.
As regards the three specific claims of the petitioner, the evidence does not support the inadequacy of Attorney McLoughlin's representation. Moreover, the petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial counsel. Even had there been deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra, at 694. Given the petitioner's voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
S.T. Fuger, Jr., Judge